**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G.A.A., <br><br> Petitioner, <br><br> v. <br><br> CHRISTOPHER CHESTNUT, et al.,[1] <br><br> Respondents. | Case No. 1:25-cv-01102-EPG-HC <br><br> ORDER GRANTING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS, DENYING PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION AS MOOT, AND DIRECTING CLERK OF COURT TO SUBSTITUTE CHRISTOPHER CHESTNUT IN THE PLACE OF TONYA ANDREWS AND SUBSTITUTE SERGIO ALBARRAN IN THE PLACE OF MOISES BECERRA <br><br> (ECF Nos. 15, 27) |

Petitioner G.A.A., represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 7, 32–34.) For the reasons set forth herein, the first amended petition for writ of habeas corpus is granted and Petitioner's motion for preliminary injunction is denied as moot.

**I.**

**BACKGROUND**

Petitioner is a citizen and national of Cameroon. (ECF No. 27 at 7, 18; ECF No. 27-1 at 2.[2]) Petitioner arrived in the United States on May 30, 2024. (ECF No. 27-1 at 2; ECF No. 27-2

---

[1] In the First Amended Petition, Petitioner names Christopher Chestnut and Sergio Albarran as Respondents, replacing previously named Respondents Tonya Andrews and Moises Becerra. (ECF No. 27 at 1.) Accordingly, Christopher Chestnut and Sergio Albarran will be substituted as Respondents in this matter.

[2] Page numbers refer to ECF page numbers stamped at the top of the page.

1

1   at 3.) Upon entry into the United States, Petitioner was taken into custody and has continued to
2   be detained. (ECF No. 27 at 19; ECF No. 27-2 at 3.)
3        On July 5, 2024, the Department of Homeland Security ("DHS") served Petitioner with a
4   notice to appear ("NTA"), charging him as removable under two provisions of section 212(a) of
5   the Immigration and Nationality Act ("INA" or "Act") for being present in the United States
6   without being admitted or paroled and without certain documents. (ECF No. 27 at 19; ECF No.
7   27-4 at 2.) Petitioner was brought to the Golden State Annex, where he was detained until he was
8   recently transferred to the California City Detention Center on August 29, 2025. (ECF No. 27 at
9   19, 21; ECF No. 27-2 at 3, 5, 10.)
10        Petitioner, proceeding *pro se*, applied for relief from removal. On February 6, 2025, an
11   immigration judge ("IJ") found Petitioner inadmissible and ordered him removed to Cameroon.
12   (ECF No. 28 at 17–20.) However, the IJ also granted Petitioner withholding of removal to
13   Cameroon under section 241(b)(3) of the INA because Petitioner "would likely be tortured
14   and/or persecuted if deported there on the basis of a protected status related to political
15   expression and ethnic/social group membership." (ECF No. 27 at 19 (citing ECF No. 27-5 at 12–
16   15).)
17        Neither Petitioner nor his immigration counsel have received any written or otherwise
18   formal notice or evidence of Immigration and Customs Enforcement's ("ICE") plans or efforts to
19   remove Petitioner to a third country. (ECF No. 27 at 20.) On August 6, 2025, Petitioner's
20   immigration counsel submitted a request to ICE for Petitioner's immediate release from custody
21   in accordance with INA section 241(a)(3) and/or parole under INA section 212(d)(5) and a 2021
22   DHS Policy Memorandum. (ECF No. 27 at 20; ECF No. 27-5.) As of September 17, 2025,
23   Petitioner's immigration counsel has not received any response regarding the August 6, 2025
24   request for release. (ECF No. 27-2 at 9, 11–12.)
25        On August 29, 2025, Petitioner filed a petition for writ of habeas corpus and a motion for
26   temporary restraining order in this Court. (ECF Nos. 1, 2.) On August 30, 2025, the Court
27   ordered that Petitioner shall not be removed from the United States nor transferred out of this
28   district. (ECF No. 5.) Petitioner withdrew the motion for temporary restraining order and filed a

1  motion for preliminary injunction on September 17, 2025. (ECF Nos. 12, 17.) Respondents filed
2  an opposition, and Petitioner filed a reply. (ECF Nos. 28, 29.) On September 17, 2025, Petitioner
3  filed a motion to amend, which was granted, and is now proceeding on the First Amended
4  Petition ("FAP"). (ECF Nos. 14, 26, 27.)

   On October 21, 2025, the assigned district judged referred the motion for preliminary
6  injunction to the undersigned for appropriate action. (ECF No. 30.) The Court then directed the
7  parties to indicate whether they were amenable to advancing the merits determination and
8  consolidating it with resolution of the preliminary injunction pursuant to Federal Rule of Civil
9  Procedure 65(a)(2).[3] (ECF No. 31.) On October 27, 2025, the parties agreed to advance the
10 merits determination and indicated that no additional briefing on the merits is required at this
11 time, subject to significant changes to the facts at issue. (ECF No. 33.)

## II.

## DISCUSSION

In the FAP, Petitioner asserts violations of INA, 8 U.S.C. § 1231(a)(6), and the Due
Process Clause of the Fifth Amendment based upon Petitioner's prolonged detention and
Respondents' third country removal procedures. (ECF No. 27 at 33–34.) Petitioner requests
immediate release and a court order declaring that removal of Petitioner without meaningful
notice and opportunity to assert a fear-based claim violates due process and/or § 1231(a)(6) and
enjoining Respondents from removing Petitioner to a third country unless Respondents provide
Petitioner and his counsel a minimum of ten days to raise a fear-based claim for protection prior
to removal, Respondents move to reopen Petitioner's removal proceedings if Petitioner
demonstrates reasonable fear of removal to the third country, and Respondents provide a
meaningful opportunity, and a minimum of fifteen days, for Petitioner to seek reopening of his
immigration proceedings if Petitioner is not found to have demonstrated a reasonable fear of
removal to the third country. (ECF No. 27 at 34–35.)

///

---

[3] "Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." Fed. R. Civ. P. 65(a)(2).

### A. Zadvydas

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,'[4] a noncitizen 'may be detained' or may be released under terms of supervision." Id. "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

---

[4] "The removal period begins on the latest of three dates: (1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(B)). "During the removal period, detention is mandatory." Guzman Chavez, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(2)).

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

Here, the parties agree that Petitioner is detained pursuant to 8 U.S.C. § 1231(a)(6) and that he has been detained beyond the presumptively reasonable six-month detention period.[5] (ECF No. 28 at 6; ECF No. 29 at 3.)

The FAP alleges:

> Since his Withholding of Removal Order became final, neither G.A.A. nor his immigration counsel have received any written or otherwise formal notice or evidence of ICE's plans or efforts to remove him to a third country. Ex. 2, ¶¶ 12-21. After months of creative tactics to try to communicate with ICE, G.A.A. and his immigration counsel now have reason to believe that ICE may have tried to unsuccessfully effectuate his third-country removal to Brazil, Bolivia and Liberia. *Id.* They also have reason to believe that ICE continues to try to effectuate his removal to Chad or Nigeria. *Id*.

(ECF No. 27 at 20.) Specifically, Petitioner's immigration counsel declares that around July 1, 2025, Petitioner informed counsel that Petitioner "approached an ICE officer during their weekly visits to the detention facility. The officer looked up his alien number on the system and told him that according to the system, they were trying to get permission from Brazil, Bolivia, or Liberia to send him there." (ECF No. 27-2 at 6.) Petitioner told counsel that Petitioner "asked the ICE officer if any of these countries had given permission to accept him, and he said that they had not yet." (Id.) On July 8, 2025, Petitioner's immigration counsel called Petitioner's deportation

---

[5] The FAP, opposition, and reply all contain different dates regarding when the removal order became final and thus, how long Petitioner's post-removal-period detention has lasted. These differences are not dispositive because regardless of when the removal order became final, the parties agree that Petitioner has been detained beyond the presumptively reasonable six-month detention period.

1  officer Charles Gallenkamp at Fresno Enforcement and Removal Operations ("ERO"). Officer
2  Gallenkamp looked up Petitioner's A-number and "said that the system showed that they were
3  checking if Chad or Nigeria would accept G.A.A." (ECF No. 27-2 at 6.) Counsel "took this to
4  mean that Brazil, Bolivia, and Liberia had not given permission, so they were trying two other
5  countries." (Id.) Counsel "asked Officer Gallenkamp if it was confirmed that either of these
6  countries would accept G.A.A., and he told me that he did not think it was confirmed, and it was
7  his understanding that 'African countries take time to respond to these requests.'" (Id.) Officer
8  Gallenkamp told counsel "that it was his understanding that as soon as one of these countries
9  gave the United States permission to send G.A.A. there, he would immediately be removed."
10 (Id.) Several months later, there have been no removal attempts. (ECF No. 29 at 5.)

11    Although Respondents contend that "Petitioner's proffered evidence . . . is entirely
12 speculative and insufficient to satisfy his burden," (ECF No. 28 at 6), Respondents do not
13 provide any evidence rebutting Petitioner's immigration counsel's declaration. Respondents only
14 provide a declaration from Petitioner's temporary deportation officer that states: "ERO is
15 actively working with the Department of State to identify a third country of removal for
16 Petitioner. Counsel for Petitioner has not been notified of a third country because this process is
17 ongoing and no suitable third country has been identified." (ECF No. 28 at 15.) Respondents do
18 not provide any further details regarding ERO's efforts. "Courts in this circuit have regularly
19 refused to find Respondents' burden met where Respondents have offered little more than
20 generalizations regarding the likelihood that removal will occur." Nguyen v. Scott, No. 2:25-CV-
21 01398, 2025 WL 2419288, at *16 (W.D. Wash. Aug. 21, 2025) (citing Singh v. Gonzales, 448 F.
22 Supp. 2d 1214, 1220 (W.D. Wash. 2006); Chun Yat Ma v. Asher, No. C11–1797 MJP, 2012 WL
23 1432229, at *4–5 (W.D. Wash. Apr. 25, 2012); Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP,
24 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025)).

25    "Thus, at this juncture, the government is not entitled to remove [Petitioner] to
26 [Cameroon], and no other country has been identified to which [Petitioner] might be removed.
27 Therefore, examining the circumstances objectively, one cannot say that his removal is
28 reasonably foreseeable." Nadarajah v. Gonzales, 443 F.3d 1069, 1082 (9th Cir. 2006). "The

1 government has not rebutted this showing, although it has had every opportunity to do so." 
2 Nadarajah, 443 F.3d at 1082. "[I]f removal is not reasonably foreseeable, the court should hold 
3 continued detention unreasonable and no longer authorized by statute. In that case, of course, the 
4 alien's release may and should be conditioned on any of the various forms of supervised release 
5 that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon 
6 a violation of those conditions." Zadvydas, 533 U.S. at 699–700.

      Based on the foregoing and under Zadvydas, the Court finds Petitioner's continued detention is unreasonable and no longer authorized by statute.[6] Therefore, Petitioner should be released on appropriate conditions of supervision. See Zadvydas, 533 U.S. at 699–700; 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."); 8 C.F.R. § 241.5 (conditions for release after removal period).

**B. Third-Country Removal**

      Petitioner asserts that "it is black letter law that G.A.A. must be provided a meaningful opportunity to apply for protection prior to removal to a third country." (ECF No. 27 at 29.) Petitioner contends that the "Government's March 30, 2025, and July 9, 2025 policy memorandums evince Respondents' intent to unlawfully effectuate a third country removal, just as they have done with many others already." (Id. at 30.)

      "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." Trump v. J. G. G., 604 U.S. 670, 673 (2025) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)). "[A] basic tenet of constitutional due process [is] that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." Andriasian v. I.N.S., 180 F.3d 1033, 1041 (9th Cir. 1999). Thus, "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported

---

[6] Given this conclusion, the Court declines to address whether Petitioner's continued detention violates the Due Process Clause.

1 violates both INS regulations and the constitutional right to due process." <u>Andriasian</u>, 180 F.3d
2 at 1041. <u>Accord</u> <u>Ibarra-Perez v. United States</u>, 154 F.4th 989, 995 (9th Cir. 2025) ("DHS must
3 also 'notify individuals who are subject to deportation that they have the right to apply for
4 asylum in the United States and for withholding of deportation to the country to which they will
5 be deported'; otherwise, DHS violates their constitutional right to due process." (quoting
6 <u>Andriasian</u>, 180 F.3d at 1041)).

On July 9, 2025, ICE Acting Director Todd M. Lyons issued a memorandum entitled, "Third Country Removals Following the Supreme Court's Order in *Department of Homeland Security v. D.V.D.,* No. 24A1153 (U.S. June 23, 2025)."[7] (ECF No. 27-13 at 2.) The memorandum provides in pertinent part:

> Effective immediately, when seeking to remove an alien with a final order of removal—other than an expedited removal order under section 235(b) of the Immigration and Nationality Act (INA)—to an alternative country as identified in section 241(b)(1)(C) of the INA, ICE must adhere to Secretary of Homeland Security Kristi Noem's March 30, 2025 memorandum, *Guidance Regarding Third Country Removals,* as detailed below. A "third country" or "alternative country" refers to a country other than that specifically referenced in the order of removal.
>
> If the United States has received diplomatic assurances from the country of removal that aliens removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures. ICE will seek written confirmation from the Department of State that such diplomatic assurances were received and determined to be credible. HSI and ERO will be made aware of any such assurances. In all other cases, ICE must comply with the following procedures:
>
> - An ERO officer will serve on the alien the attached Notice of Removal. The notice includes the intended country of removal and will be read to the alien in a language he or she understands.

---

[7] "On March 28, 2025, the District of Massachusetts entered a TRO enjoining ICE from '[r]emoving any individual subject to a final order of removal from the United States to a third country, *i.e.,* a country other than the country designated for removal in immigration proceedings' unless certain conditions were met." <u>Nguyen v. Scott</u>, No. 2:25-CV-01398, 2025 WL 2419288, at *7 (W.D. Wash. Aug. 21, 2025) (alteration in original) (quoting <u>D.V.D. v. U.S. Dep't of Homeland Sec.</u>, No. CV 25-10676-BEM, 2025 WL 942948, at *1 (D. Mass. Mar. 28, 2025)). "On April 18, 2025, the district court issued an order granting the plaintiffs' motion for class certification and motion for preliminary injunction." <u>Nguyen</u>, 2025 WL 2419288, at *7 (citing <u>D.V.D. v. U.S. Dep't of Homeland Sec.</u>, 778 F. Supp. 3d 355, 394 (D. Mass. 2025)). "The preliminary injunction established procedures that DHS and ICE were required to follow before removing a noncitizen to a third country." <u>Nguyen</u>, 2025 WL 2419288, at *7 (citing <u>D.V.D. v. U.S. Dep't of Homeland Sec.</u>, No. CV 25-10676-BEM, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025)). "On June 23, 2025, the United States Supreme Court stayed the district court's preliminary injunction pending appeal in the First Circuit." <u>Nguyen</u>, 2025 WL 2419288, at *7 (citing <u>Dep't of Homeland Sec. v. D.V.D.</u>, 145 S. Ct. 2153 (2025)). This July 9, 2025 memorandum followed.

- ERO will <u>not</u> affirmatively ask whether the alien is afraid of being removed to the country of removal.
- ERO will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal. In exigent circumstances, ERO may execute a removal order six (6) or more hours after service of the Notice of Removal as long as the alien is provided reasonable means and opportunity to speak with an attorney prior to removal.
    - Any determination to execute a removal order under exigent circumstances less than 24 hours following service of the Notice of Removal must be approved by the DHS General Counsel, or the Principal Legal Advisor where the DHS General Counsel is not available.
- If the alien does not affirmatively state a fear of persecution or torture if removed to the country of removal listed on the Notice of Removal within 24 hours, ERO may proceed with removal to the country identified on the notice. ERO should check all systems for motions as close in time as possible to removal.
- If the alien does affirmatively state a fear if removed to the country of removal listed on the Notice of Removal, ERO will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection under section 241(b)(3) of the INA and the Convention Against Torture (CAT). USCIS will generally screen the alien within 24 hours of referral.
    - USCIS will determine whether the alien would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal.
    - If USCIS determines that the alien has not met this standard, the alien will be removed.
    - If USCIS determines that the alien has met this standard and the alien was not previously in proceedings before the immigration court, USCIS will refer the matter to the immigration court for further proceedings. In cases where the alien was previously in proceedings before the immigration court, USCIS will notify the referring immigration officer of its finding, and the immigration officer will inform ICE. In such cases, ERO will alert their local Office of the Principal Legal Advisor (OPLA) Field Location to file a motion to reopen with the immigration court or the Board of Immigration Appeals, as appropriate, for further proceedings for the sole purpose of determining eligibility for protection under section 241(b)(3) of the INA and CAT for the country of removal. Alternatively, ICE may choose to designate another country for removal.

Notably, the Supreme Court's stay of removal does not alter any decisions issued by any other courts as to individual aliens regarding the process that must be provided before removing that alien to a third country.

(ECF No. 27-13 at 2–3.)

"This policy contravenes Ninth Circuit law, as laid out above. It would be impossible to comply both with Ninth Circuit precedent and the policy." <u>Nguyen</u>, 2025 WL 2419288, at *19 (citations omitted). See <u>Vu v. Noem</u>, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at

*9 (E.D. Cal. Nov. 6, 2025) ("ICE's policy is contrary to Ninth Circuit precedent."). Despite the existence of ICE's written policy, Respondents argue that "Petitioner does not provide any evidence of his own past or current procedural injury" and Petitioner fails to show that wrongful behavior would likely occur or continue. (ECF No. 28 at 7, 8.) "Presumably, Respondent is trying to suggest that Petitioner has not demonstrated immediacy of injury for purposes of Article III standing." Y.T.D. v. Andrews, No. 1:25-CV-01100 JLT SKO, 2025 WL 2675760, at *11 (E.D. Cal. Sept. 18, 2025).

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). "Abstract injury is not enough. The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" Id. at 101–02 (citations omitted). See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 190 (2000) ("[I]n a lawsuit brought to force compliance, it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury [is] certainly impending.'" (second alteration in original) quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)).

> To have standing to assert a claim for prospective injunctive relief, a plaintiff must demonstrate "that he is realistically threatened by a repetition of [the violation]." *City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). We have "enumerated two ways in which a plaintiff can demonstrate that such injury is likely to recur." *Mayfield,* 599 F.3d at 971. "First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy." *Armstrong,* 275 F.3d at 861. "Second, the plaintiff may demonstrate that the harm is part of a 'pattern of officially sanctioned ... behavior, violative of the plaintiffs' [federal] rights.'" *Id.* (alterations in original), *quoting LaDuke v. Nelson,* 762 F.2d 1318, 1323 (9th Cir.1985).

Melendres v. Arpaio, 695 F.3d 990, 997–98 (9th Cir. 2012). "While this test is framed in terms of a past harm already experienced, a plaintiff is not strictly required to have *already suffered* a

1  harm in order to seek prospective injunctive relief." Esmail v. Noem, No. 2:25-CV-08325-WLH-
2  RAO, 2025 WL 3030589, at *5 n.7 (C.D. Cal. Sept. 26, 2025). "Rather, 'the plaintiff must
3  demonstrate that he has suffered *or* is threatened with a concrete and particularized legal harm,
4  coupled with a sufficient likelihood that he will again be wronged in a similar way.'" Id. (internal
5  quotation marks and citations omitted) (quoting Bates v. United Parcel Serv., Inc., 511 F.3d 974,
6  985 (9th Cir. 2007)).

7  Petitioner asserts that "DHS' written and uncontested Third-Country Removal Policy and
8  recent unlawful third-country removals is sufficient evidence to confer G.A.A.'s standing given
9  he theoretically could be subject to a third-country removal if DHS ever identifies a 'suitable
10 third country.'" (ECF No. 29 at 10.) Respondent contends that Petitioner relies "on
11 misunderstandings of existing policy," alleging that "the memorandum specifically
12 acknowledges that Respondents remain bound by 'any decisions issued by any other courts to
13 individuals regarding the process that must be provided before removing that alien to a third
14 country.'" (ECF No. 28 at 8.) Respondents appear to argue that their acknowledgement of
15 "existing circuit precedent and Respondent's continued commitment to abiding by the
16 requirements of said precedent," (ECF No. 28 at 8), falls within the exception provided by the
17 July 9, 2025 memorandum that "the Supreme Court's stay of removal does not alter any
18 decisions issued by any other courts as to individual aliens regarding the process that must be
19 provided before removing that alien to a third country," (ECF No. 27-13 at 3). However, Ninth
20 Circuit precedent does not constitute a decision issued by a court as to Petitioner individually,
21 and as noted by Petitioner, Respondents' "argument counsels in favor of . . . injunctive relief
22 because a decision regarding such process as to G.A.A. (an 'individual') is precisely what he
23 seeks in this action." (ECF No. 29 at 10.)

24 With respect to Petitioner's argument that "the Government has repeatedly attempted to
25 unlawfully remove deportees to third countries," citing to various out-of-district cases, (ECF No.
26 27 at 30–31), Respondents contend that "Petitioner does not even attempt to demonstrate if he
27 was similarly situated with the few individuals who allegedly were removed without adequate
28 procedures," (ECF No. 28 at 9). "Where, as here, 'the harm alleged is directly traceable to a

11

written policy . . . there is an implicit likelihood of its repetition in the immediate future.'" Bates, 511 F.3d at 986 (quoting Armstrong v. Davis, 275 F.3d 849, 861 (9th Cir. 2001), abrogated on other grounds by Johnson v. California, 543 U.S. 499, 504–05 (2005)). Despite Respondents' assurances that "[p]ursuant to existing Ninth Circuit authority, ICE fully understands that prior to removal to an alternate country other than Cameroon, Petitioner must be provided notice, an opportunity to claim fear, and, if a fear is claimed, an opportunity to have that claim adjudicated. ICE fully intends to abide by those requirements as to Petitioner," (ECF No. 28 at 15), ICE's July 9, 2025 "policy contravenes Ninth Circuit law, as laid out above. It would be impossible to comply both with Ninth Circuit precedent and the policy." Nguyen, 2025 WL 2419288, at *19 (citations omitted). Therefore, "[o]n balance, on this record, the Court finds that there is a sufficiently imminent risk that Petitioner will be subjected to improper process in relation to any third country removal to warrant imposition of an injunction requiring additional process." Y.T.D., 2025 WL 2675760, at *11 (finding petitioner demonstrated immediacy of injury for purposes of Article III standing regarding third country removal claim where the government was actively working to identify third country of removal but had not attempted such removal). See also Esmail, 2025 WL 3030589, at *5 ("The Court is satisfied that, as a noncitizen with a removal order[8] – who is, therefore, inherently subject to the policies articulated in the Noem and Lyons Memos – Petitioner has sufficiently demonstrated 'that he is realistically threatened by a

---

[8] Regardless of whether Petitioner has been told "his removal is [ ] imminent[,]" (*see* Opp'n to Mot. at 6), the Court is satisfied that Petitioner's identity as a noncitizen with a removal order – as well as an order deferring removal to his home country, Tanzania (*see* Docket No. 4-1, Ex. 2 ("Deferral of Removal under the UN CAT") – makes him inherently at risk of removal under the terms of the policy expressed in the Noem and Lyons Memos. Notably, the District Court for the District of Columbia was forced to dismiss a similar habeas petition because ICE "executed its unlawful third country removal policy before the court could [even] issue a TRO[.]" (Mot. ¶ 14); *see D.A., T.L., I.O. D.S., and K.S. v. Noem, et al.*, 1:25-cv-03135, at *15 (D.D.C. Sept. 12, 2025) (Docket No. 41) (dismissing habeas petition where noncitizens were removed pursuant to Noem Memo's policy). Respondents unconvincingly contend that this injunctive relief is unnecessary where "Respondents already as a matter of law and protocol must 'afford Petitioner a meaningful opportunity to contest his removal to a third country on the basis of fear of persecution and torture.' " (Opp'n to Mot. at 7) (quoting TRO at 16 n. 14). Contrary to this argument, the Noem and Lyons Memos command ICE to *not* always afford the opportunity to contest removal to a third country.
Esmail, 2025 WL 3030589, at *5 n.8.

repetition of the violation' at issue." (footnote in original) (some internal quotation marks and citations omitted)).

### C. Attorney's Fees

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (ECF No. 27 at 35.) The EAJA provides in pertinent part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
>
> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412 (d)(1)(A)–(B). The Court will consider an application from Petitioner requesting and substantiating reasonable fees and costs under the EAJA that is filed within thirty days of the judgment.

## III.
## ORDER

Accordingly, the Court HEREBY ORDERS that:

1. The first amended petition for writ of habeas corpus (ECF No. 27) is GRANTED;

2. Petitioner's motion for preliminary injunction (ECF No. 15) is DENIED as MOOT;

///

3. Respondents **SHALL IMMEDIATELY RELEASE** Petitioner under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5;

4. Respondents are **PERMANENTLY ENJOINED AND RESTRAINED** from effectuating Petitioner's third country removal unless Respondents adhere to the following procedures:

    a. Provide Petitioner and his counsel a minimum of ten (10) days to raise a fear-based claim for protection prior to removal;

    b. If Petitioner demonstrates reasonable fear of removal to the third country, Respondents must move to reopen Petitioner's removal proceedings;

    c. If Petitioner is not found to have demonstrated a reasonable fear of removal to the third country, Respondents must provide a meaningful opportunity, and a minimum of fifteen (15) days for Petitioner to seek reopening of his immigration proceedings.

5. The Clerk of Court is DIRECTED to:

    a. Substitute Christopher Chestnut in the place of Tonya Andrews; and

    b. Substitute Sergio Albarran in the place of Moises Becerra.

6. Within **TWO (2) days** of the date of service of this order, counsel for Respondents SHALL file a status report to confirm that Petitioner has been released.

IT IS SO ORDERED.

Dated:   **November 21, 2025**          /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE

14